UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARNELL W. MOON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|   vs. | )   Case No. 4:23 CV 1563 JMB |
| | ) |
| DANIEL MACKE, KIM BRAMLETT, | ) |
| CHARLES DOERGE, LYNN LYONS, | ) |
| NED BOYD, PATRICK JAMES, | ) |
| CLINT VESTAL, SARGEANT GOGGINS, | ) |
| GARY STOLZER, JASON SCHOTT, | ) |
| ANDY JOHNSON, and ANDREW HAR, | ) |
| | ) |
|    Defendants. | ) |

## OPINION, MEMORANDUM and ORDER

Now pending before the Court are the Motions to Substitute Party filed by Defendants Ned Boyd, Kim S. Bramlett, Charles Doerge, Patrick James, Daniel Macke, and Clint Vestal (Doc. 10) and Defendants Andrew Har and Lynn Lyons (Doc. 50). Plaintiff filed a response to the first motion on April 22, 2024 (Doc. 43)[1] to which Defendants replied (Doc. 47). For the reasons set forth below, the Motions are **GRANTED**.

---

[1] Plaintiff was granted until April 16, 2024 to file a response. The response was dated April 15, 2024 but filed on April 22, 2024. Therefore, the response is untimely. The Court notes that the 15th was a Monday and the document was received by the Clerk on the 22nd, also a Monday. There is no certificate of service or relevant affidavit attached to the response; as such, it is unclear when Plaintiff placed the document in the prison mailing system. Typically, a prisoner can benefit from the "prison mailbox rule" which generally provides that a pleading is filed on the day that a prisoner hands it to authorities for mailing – the theory being that the prisoner has no control over when a document is actually mailed once he turns it over for mailing. This rule, however, has only been applied to notices of appeal and related documents, See Fed.R.App.P. 4(c) and United States v. Duke, 50 F.3d 571, 575 (8th Cir. 1995); petitions for a writ of habeas corpus, Henderson-El v. Maschner, 180 F.3d 984, 985-986 (8th Cir. 1999); and, § 1983 complaints. Sulik v. Taney County, Mo., 315 F.3d 813, 815 (8th Cir. 2003), overruled on other grounds, Sulik v. Taney County, Mo., 393 F.3d 765 (8th Cir. 2005). There is no binding case authority suggesting that the rule would apply to other documents filed in a § 1983 case other than the complaint. Moreover, Plaintiff has the burden of demonstrating that the response was timely. Porchia v. Norris, 251 F.3d 1196, 1198 (8th Cir. 2001); See also Henderson-El, 180 F.3d 985-986 (stating that neither the date a document is signed or the date that it is filed with the clerk aids a determination of whether a document was timely filed). Plaintiff makes no mention of the untimeliness of his response and has not met his burden even if he could benefit from the prison mailbox rule. In any event, Defendants have not objected to the timing of the response and it will therefore be considered by the Court.

**BACKGROUND**

Plaintiff filed suit on October 10, 2023, in state court alleging claims against employees of the United States Probation Office (Daniel Macke, Kim Bramlett, Charles Doerge, Clint Vestal, Andrew Har, and Unknown US Probation Officers), the United States Bureau of Prisons (Lynn Lyons), the United States Marshals Service (Patrick James and Edward Boyd) (collectively "Federal Defendants"), and the Saint Genevieve Sheriff's Department (Sergeant Goggins, Gary Stolzer, Jason Schott, and Andy Johnson) (collectively "State Defendants"). Plaintiff states that he is a "jailhouse lawyer" and that he assisted other inmates in their legal filings while he was incarcerated and upon his release from prison (on supervised release). He claims that, because he assisted other inmates, Defendants conspired to send him back to prison, that they illegally intercepted his communications with an inmate at the Saint Genevieve County jail, that they are intercepting his other phone calls, emails, and messages, that they are retaliating against him for assisting others in their legal endeavors, and that they have invaded his privacy. As a result, he alleges he has suffered severe emotional distress and he seeks declaratory, injunctive, nominal, compensatory and punitive relief.

This case was removed to federal court on December 6, 2023, by the Federal Defendants (who had appeared) pursuant to 28 U.S.C. § 1442(a)(1), which permits removal of claims against United States agencies and officers (Doc. 1). In doing so, the United States Attorney for the Eastern District of Missouri, Sayler Fleming, certified that Defendants Macke, Bramlett, Doerge, and Vestal are employees of the United States Probation Office for the Eastern District of Missouri, that Defendant James and Boyd are employees of the United States Marshals Service, and that each of these Defendants was acting within the scope of their employment during the relevant time

period pursuant to 28 U.S.C. § 2679 (Doc. 1-4).  Prior to removal, it appears that Defendants Macke, Bramlett, Doerge, Boyd, James, Goggins, Stolzer, Schott, and Johnson were served with summons and the complaint (Doc. 1-3, pp. 4-5).  Defendants Lyons, Vestal,[2] and Har were not served at that time.

On December 13, 2023, the State Defendants filed a motion to dismiss (Doc. 7) and a memorandum in support (Doc. 17).  Plaintiff filed a response on April 22, 2024 (Doc. 42) to which these Defendants replied (Doc. 48).

On December 21, 2023, the Federal Defendants, except Har and Lyons, filed a Motion to Substitute the United States of America as Defendant (Doc. 10).  Har, Lyons, and Vestal have now been served and Har and Lyons also seek to substitute the United States (Doc. 50).  In making their motion, Defendants only seek to substitute the United States for the named Federal Defendants in the state law claims alleged in Counts V – X of the Complaint.  In those Counts, Plaintiff alleges violations of Missouri's Wiretapping Act (Count V), negligence (Count VI), negligence per se (Count VII), state law civil conspiracy (Count VIII), invasion o[3]f privacy (Count IX), and intentional infliction of emotional distress (Count X).

Plaintiff's claims stem from when he was released from prison on supervised release in November 2022 related to a felony conviction in this District.  At the time, his probation officer was Daniel Macke.  Plaintiff alleges that during that period of supervision, he assisted an inmate (Willie James Lowe) file suit against Macke, in addition to other lawsuits.  When Macke found out, he, along with Kim Bramlett, Ned Boyd, and Patrick James, used the judicial process to start

---

[2] Notwithstanding lack of service at the time of removal, the U.S. Attorneys' Office has entered an appearance on behalf of Vestal.

[3] Counts I – IV assert federal constitutional or statutory claims and are not included in Defendants' motions.

intercepting his phone calls with Lowe, text messages, and emails. Macke also communicated with Andrew Har, who was Lowe's probation officer, and along with Lynn Lyons, James, and Boyd "hatched a scheme to have plaintiff arrested for 'being around anyone with a felony'" in order to retaliate against him for assisting Lowe in his legal endeavors. These Defendants also allegedly hatched a scheme to arrest Macke for associating with a felon (Lowe) and harboring a fugitive, which Lowe would unwittingly become based on the machinations of the Defendants. In making these allegations, Plaintiff states that part of his conditions of supervised release imposed by the District Court for the Middle District of Tennessee (which ran concurrent with his term of supervised release in this District) was that he not knowingly associate with a convicted felon without his probation officer's permission. As such, as part of the scheme, Macke orchestrated the transfer of his supervised release from MDTN to this District in July 2023.

There is no allegation in the complaint that Plaintiff was actually arrested or that his supervised release was revoked in relation to his association with Lyon (although he does assert that an arrest warrant was issued). Plaintiff states that each of the actions of the Federal Defendants was made while employed as federal agents.

## DISCUSSION

In general, the United States and its agencies are immune from suit unless sovereign immunity is waived by Congress. Loeffler v. Frank, 486 U.S. 549, 554-555 (1988). As it relates to this case, the United States has waived sovereign immunity in civil actions

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).  The Westfall Act, codified at 28 U.S.C. § 2679, further provides for the immunity of federal employees in such actions:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

The practical effect is that if Plaintiff is suing federal employees for their allegedly negligent or wrongful acts taken within the scope of their employment, then his only remedy is against the United States, which must be substituted as the party Defendant.  Kearns v. United States, 23 F.4th 807, 811 (8th Cir. 2022); Anthony v. Runyon, 76 F.3d 210 , 212-213 (8th Cir. 1996).  There is no question that the Federal Defendants are employees of the United States and Plaintiff is alleging negligent or wrongful acts in Counts V – X.  The Attorney General (through U.S. Attorney Fleming) filed a certification stating that the Federal Defendants were acting within the scope of their employment during the relevant time period (Docs. 1-4 and 50-1).  As both parties acknowledge, the certification is *prima facie* evidence that the Federal Defendants were acting within their scope of their employment and is sufficient for removal.  Anthony, 76 F.3d at 213.  However, the certification does not conclusively establish that the Federal Defendants were acting within the scope of their employment such that the United States should be substituted as a party Defendant.  Id.  Rather, once Plaintiff challenges the certification, the Court must independently determine if the Westfall Act applies.  Id.  Plaintiff "bears the burden of coming forward with specific facts rebutting the certification." Lawson v. United States, 103 F.3d 59, 60 (8th Cir. 1996).

Furthermore, "[a]n evidentiary hearing should be held if there are material fact issues in dispute" regarding the scope of employment. McAdams v. Reno, 64 F.3d 1137, 1145 (8th Cir. 1995).

The law of the place where the tortious acts occurred govern whether Defendants were acting within the scope of their employment; in this case, Missouri. Kearns, 23 F.4th at 812. Under Missouri Law,

> An act is within the course and scope of employment if (1) even though not specifically authorized, it is done to further the business or the interests of the employer under her general authority and direction and (2) it naturally arises from the performance of the employer's work.

Higgenbotham v. Pit Stop Bar & Grill, LLC, 548 S.W.3d 323, 328 (Mo. Ct. App. 2018) (citation omitted).

Plaintiff argues that the Federal Defendant's conduct was not within the scope of employment but personal and with an intent to retaliate against him. However, "[w]hether an act was committed within the scope and course of employment is measured not by the time or motive of the conduct, but by whether it was done by virtue of the employment and in furtherance of the business or interest of the employer." Higgenbotham, 548 S.W.3d at 328. As such, Defendants' motivation for their actions is irrelevant as is the contention that their acts were ill-advised. Id. Rather, it is by virtue of their employment by the United States that they were capable of allegedly orchestrating Plaintiff's potential arrest for violations of his terms of supervised release, act which form the basis on Plaintiff's state law claims. And, the Federal Defendants were acting to further the business of the United States in ensuring that recently released felons are abiding by the terms of their supervised release, regardless of the allegedly ill-advised nature of their conduct.

In addition, Plaintiff comes forth with no evidence that would refute the certification. Instead, he requests an evidentiary hearing without disclosing any circumstances that would require such a hearing. Accordingly, no evidentiary hearing is required. Finally, as noted above,

the United States would only be substituted for the Federal Defendants as to Counts V – X and not Counts I – IV which allege constitutional and federal statutory claims.

## CONCLUSION

For the above reasons, the Court finds that the Federal Defendants were acting within the scope of their employment during the relevant time period and that the United States should be substituted as a party Defendant.

Accordingly, the Motions to Substitute Party (Docs. 10 and 50) are **GRANTED**. The United States is **HEREBY substituted** for Defendants Ned Boyd, Kim S. Bramlett, Charles Doerge, Patrick James, Daniel Macke, Clint Vestal, Andrew Har, and Lynn Lyons as to Counts V – X of the Complaint, only.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of May, 2024